Dear Honorable Johnson,
The Attorney General has received your request for an official opinion asking:
 "1. Is a county required to utilize the competitive bidding procedures established by 19 O.S. 1500 - 19 O.S. 1505 (1984), when acquiring insurance coverage for county employees?" and
 "2. If the provisions of 19 O.S. 1500 - 19 O.S. 1505 (1984), do not apply, may a county enter into a contract to acquire insurance coverage for county employees for a period in excess of one year?"
We do not find any procedures provided by statutory provisions that would require the use of competitive bidding when purchasing insurance coverage for its employees by a county other than possibly 19 O.S. 1500
through 19 O.S. 1505 (1984). Thus, we begin our examination of your questions by reviewing the bidding procedures established under 19 O.S.1500 — 19 O.S. 1505 (1984).
In 1982, the Oklahoma Legislature established a procedure for counties in acquiring the necessary items for their use. See, 19 O.S. 1500
— 19 O.S. 1505 (1984).
Title 19 O.S. 1501 (1984), places upon the county purchasing agent the duty to make all purchases paid from county funds for the various departments, offices and employees of the county. Subsection 3 states that "a county shall make purchases and rental or lease purchase agreements only after following the bidding procedures as provided by law[.]"
In addition, Subsection 3 provides for exceptions from the statutorily established bidding procedures. For purposes of this Opinion, we are assuming that a particular acquisition of insurance coverage will not fall into one of these exceptions.
Title 19 O.S. 1505 (1984) establishes a bidding procedure to be used in certain circumstances. This statute states, in relevant part:
 "The following procedures shall be used by counties for the requisition, purchase, lease purchase, rental, and receipt of supplies, materials, and equipment for the maintenance, operation, and capital expenditures of county government unless otherwise provided for by law." (Emphasis added).
Answering your first question requires a determination of what is the acquisition of insurance coverage for county employees. If such an acquisition is the acquisition of "supplies, materials and equipment for the maintenance, operation, and capital expenditure of county equipment," then the county is required to utilize the procedure established by 19O.S. 1505 (1984). If not, then the county is not required to utilize that procedure.
We note that there is no statutory definition of supplies, materials, equipment or capital expenditures in the statutes governing county purchasing procedures. Nor do the statutes define the acquisition of an insurance contract. See, 19 O.S. 1500 — 19 O.S. 1505 (1984).
In Attorney General Opinion No. 84-201, we examined the nature of the acquisition of an insurance contract by the Oklahoma Turnpike Authority in light of the Central Purchasing Act, 74 O.S. 85.12 et seq. (1981), as amended. In that Opinion, we determined that the acquisition of an insurance contract was the acquisition of a service by the purchasing entity. This determination was based upon an understanding of the common meaning of an insurance contract plus the statutory definition for "services" in the Central Purchasing Act. Using the same analogy, the acquisition of an insurance contract by the county would not be the acquisition of supplies, materials or equipment.
Another rule of statutory construction is the maxim "expressio unius est exclusio alterius," which means the mention of one thing in a statute implies the exclusion of another. Hardesty v. Andro Corporation WebsterDivision, 555 P.2d 1030 (Okla. 1976). While this maxim is to be exercised with great caution and is merely an auxiliary rule of statutory construction, this rule seems appropriate in this situation. The failure of the legislature to include items such as an insurance contract in 19O.S. 1505 (1984), implies that these items would be excluded from the statutory provisions. Thus, a county is not subject to the provisions of the County Purchasing Act, 19 O.S. 1500 through 19 O.S. 1505 (1984), when acquiring insurance coverage for the county and its employees.
Your second question can be answered by an examination of Article X, Section 26 of the Oklahoma Constitution, which states:
 "No county, city, town, township, school district, or other political corporation, or subdivision of the State, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose[.]" (Emphasis added).
This constitutional provision only permits a county to enter into contracts payable from the revenues and income of that year, unless agreed upon by a three-fifths (3/5) vote of the people voting for that purpose. See, Boardman Co. v. Board of Com'rs. of Ellis Co., 276 P. 474
(Okla. 1929); Garvin Co. v. Lindsay Bridge Co., 124 P.329 (Okla. 1912). Thus, a county could only enter into a contract for one year unless agreed upon by three-fifths (3/5) vote of the people voting for that purpose.
It is, therefore, the official opinion of the Attorney Generalthat:
 1. A county is not required to utilize the competitive bidding procedures established in 19 O.S. 1505 (1984), when acquiring insurance coverage for the county and/or its employees.
 2. Article X, Section 26 of the Oklahoma Constitution permits a county to enter into a contract to acquire insurance coverage for county employees only for one year, payable from revenues and income of the same contracting year. However, Article X, Section 26 of the Oklahoma Constitution would allow a county to enter into a contract to acquire insurance coverage for an undetermined number of years, if three-fifths (3/5) of the voters of said county approve such a transaction at an election held for that purpose.
MICHAEL C. TURPEN, ATTORNEY GENERAL OF OKLAHOMA
RICHARD MILDREN, ASSISTANT ATTORNEY GENERAL